602 So.2d 318 (1992)
STATE of Louisiana
v.
Donald L. WILLIAMS, Jr.
No. KW 92 0094.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
Writ Denied October 9, 1992.
Pamela Hershey, Asst. Dist. Atty., Covington, for State.
Nancy L. Yeager, Asst. Public Defender, Covington, for Williams.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
The defendant, Donald L. Williams, Jr., was charged by grand jury indictment with one count of second degree murder, in violation of La.R.S. 14:30.1, and one count of attempted first degree murder, in violation of La.R.S. 14:27 and 30.1. He pleaded not guilty and filed a motion to suppress his taped and written confessions. At the hearing on the motion to suppress the State introduced the testimony of Detective Daymond Uloth of the Mandeville Police Department, and certain documentary evidence (S-1 through S-5). The defendant filed documentary evidence (Defense Exhibits 1-4). After the hearing, the trial court granted the motion to suppress. The State applied to this court for supervisory writs. We granted certiorari and stayed all further proceedings in the trial court.

FACTS
At approximately 7:25 p.m. on March 1, 1991, the defendant shot his father, Donald L. Williams, Sr., during an argument. When the defendant tried to leave the scene, he was confronted by another man, Albert Fairley. The defendant shot Fairley before fleeing. Fairley died from the gunshot wound. The defendant was arrested about forty-five minutes after these shootings occurred. Several hours later, the defendant gave a tape-recorded confession, and shortly thereafter gave a written confession. The defendant was advised of his Miranda rights at least four times between his arrest and the taking of the taperecorded confession.

*319 VALIDITY OF THE CONFESSIONS
The only issue before us is whether the defendant was intoxicated to such a degree that his confessions were not freely and voluntarily given.
Before a confession can be admitted into evidence, the State has the burden of affirmatively showing that it was made freely and voluntarily, and was not influenced by fear, duress, intimidation, menaces, threats, inducements, or promises. La. C.Cr.P. art. 703; La.R.S. 15:451. Furthermore, if a confession was elicited during custodial interrogation, the State must show that the defendant was advised of his constitutional rights. State v. Trahan, 481 So.2d 729 (La.App. 1st Cir.1985).
When the free and voluntary nature of a confession is challenged on the ground that the defendant was intoxicated at the time of the confession, the confession will be inadmissible only when the intoxication is of such a degree as to negate the defendant's comprehension and to make him unconscious of the consequences of what he is saying. Whether intoxication exists and is sufficient to vitiate the voluntariness of a confession are questions of fact, and the trial court's ruling on this issue will not be disturbed unless unsupported by the evidence. State v. Latiolais, 563 So.2d 469 (La.App. 1st Cir.1990).
At the suppression hearing, Uloth testified that he detected an odor of alcohol on the defendant's breath at the time of his arrest. However, the defendant appeared to understand his Miranda rights and conversed with Uloth when answering questions. During the booking procedure at the police station, the defendant "passed out" while being photographed. Uloth testified that he thought the defendant was faking; but, out of an abundance of caution, the defendant was taken to the hospital.
Defense Exhibit 2 contained the defendant's medical records from the St. Tammany Parish Hospital, including an emergency room report. Uloth testified that he was present in the emergency room when the defendant was questioned by the admissions nurse, and when the defendant was questioned and examined by the emergency room doctor. According to Uloth, the defendant gave appropriate responses to the questions. However, the admissions nurse indicated on the emergency room report that the defendant was "unable to answer appropriately". A test performed at the hospital indicated that the defendant had a blood alcohol level of 0.169 grams percent. The defendant was not admitted into the hospital. Instead, the emergency room doctor discharged him at 10:30 p.m. The defendant was returned to the police station, and booking was completed. After again receiving his Miranda rights, the defendant gave a tape-recorded confession beginning at 11:05 p.m. and ending at 11:17 p.m. The defendant gave a handwritten confession at approximately 11:36 p.m.
The trial court found a major inconsistency between the testimony of Uloth and the remarks of the admissions nurse on the emergency room report. Specifically, the admissions nurse indicated that the defendant was unable to appropriately respond to questions while Uloth testified that the defendant gave appropriate responses. The trial court also expressed doubt about Uloth's testimony that the defendant was "faking it" when he passed out at the police station while being photographed. The trial court placed great weight on the defendant's blood alcohol level and concluded that the defendant did not knowingly and intelligently waive his Miranda rights before giving these confessions.
In brief to this Court, the defense notes the defendant's blood alcohol level of 0.169 grams percent and emphasizes the remarks by the admissions nurse. The defendant contends that the trial court made a "credibility call" after comparing Uloth's testimony to the remarks made by the admissions nurse contained in Defense Exhibit 2 and concludes that the trial court's determination on matters of credibility is entitled to great deference.
In brief to this Court, the State relies on State v. Edwards, 434 So.2d 395 (La.1983), a case involving the issue of whether or not the defendant's intoxication *320 precluded the voluntariness of his consent to search. In Edwards, the Louisiana Supreme Court concluded that an intoxication level of .10 grams percent or greater (the level established as presumptive evidence of intoxication for purposes of La.R.S. 32:662) does not automatically make an otherwise valid consent per se involuntary. The Louisiana Supreme Court concluded that the degree of intoxication was but one of the circumstances a trial court should consider in assessing the voluntariness of a consent to search. Edwards, 434 So.2d at 398. These principles are applicable to the instant case. A blood alcohol level equal to or greater than .10 grams percent does not automatically render an otherwise valid confession per se involuntary, nor does it increase the State's burden of proof.[1]
The trial court placed great emphasis on the remarks made by the admissions nurse, and the fact that these remarks conflicted with the testimony of Uloth. However, there are several inconsistencies in the emergency room report. In a section of the report labeled "condition on admission" there were six boxes labeled as follows: good, fair, poor, alert, awake and unresponsive. The admissions nurse placed a checkmark inside the boxes indicating fair, alert, and awake; she did not mark the box labeled "unresponsive". The doctor's remarks about his physical examination of the defendant contained the words "awake" and "responsive".
Further, the trial court did not consider the relevant time factors in this case. The time of admission on the emergency room report is 9:20 p.m. The nurse made her comments on the defendant's condition after his admission. However, by 10:30 p.m., the emergency room doctor concluded that the defendant's condition was such that he could be released from the hospital and into the custody of the police. The only evidence in the record about the defendant's physical condition and ability to understand and respond to his Miranda rights at 11:05 p.m. (when the tape-recorded confession was commenced) and 11:36 p.m. (when the handwritten confession was made) was the unrebutted testimony of Uloth. According to Uloth's testimony, between 10:30 p.m. and 11:36 p.m., the defendant was not so intoxicated that he could not understand and knowingly waive his Miranda rights.
After a careful review of Uloth's testimony and all of the documentary evidence introduced at the suppression hearing, we find the State carried its burden of proving that the defendant gave these two confessions freely and voluntarily after a knowing waiver of his Miranda rights. Our decision is reinforced by an examination of S-4 (the written confession) and S-5 (the transcript of the tape-recorded confession), which show that the defendant gave reasonably direct responses to questions, expressed his thoughts in an appropriate manner, and was able to correct his written mistakes. The trial court's ruling is not supported by the evidence and, therefore, we reverse it.
In his brief to this Court, the defendant asserts for the first time that the drug screen test given to the defendant revealed the presence of cocaine. The defendant concedes that the trial court made no mention of this fact. Instead, the defendant speculates about the possible effect of cocaine combined with alcohol on the voluntariness of these confessions. The drug screen test results indicated the presence of cocaine metabolite and cannabinoids. There was no evidence introduced at the suppression hearing about when the defendant used cocaine or marijuana, the amounts used, the manner in which these substances were ingested, or the possible effect, if any, that these substances (either by themselves or combined with alcohol) might have on the defendant's ability to understand and waive his Miranda rights and give voluntary confessions. As noted above, the only evidence presented on the *321 defendant's condition and his ability to comprehend his actions at the time he gave these confessions was the testimony of Uloth and the substance of these confessions, which indicated that the defendant understood his Miranda rights, waived them, and freely gave voluntary confessions.

DECREE
For the foregoing reasons, the writ of certiorari previously issued herein is made peremptory; the trial court judgment granting the motion to suppress is reversed and judgment is rendered in favor of the State and against the defendant denying the motion to suppress; the stay order previously issued is recalled; and this case is remanded to the trial court for further proceedings in accordance with law.
REVERSED; RENDERED; AND REMANDED.
NOTES
[1] In State v. Jackson, 452 So.2d 1250 (La.App. 2d Cir.), writ denied, 457 So.2d 17 (La.1984) and State v. King, 573 So.2d 604 (La.App. 2d Cir. 1991), the Second Circuit found that statements made by the defendants were knowingly made after freely and voluntarily waiving their Miranda rights, despite blood alcohol levels of .16 grams percent and .359 grams percent, respectively.